1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10
11   RENÉ ELLIS,                              )   Case No. CV 09-06461 DMG (JC)
                                             )
12                          Petitioner,      )   **ORDER ADOPTING IN PART**
                                             )   **FINDINGS, CONCLUSIONS, AND**
13              v.                           )   **RECOMMENDATIONS OF UNITED**
                                             )   **STATES MAGISTRATE JUDGE**
14   LINDA SANDERS, Warden,                  )
                                             )
15                          Respondent.      )
                                             )
16   _____      )
17
18          On September 4, 2009, Petitioner René Ellis filed a Petition for Writ of Habeas
19   Corpus under 28 U.S.C § 2241 challenging the conditions of his confinement.
20   Respondent filed a Motion to Dismiss the Petition on the grounds that Petitioner has not
21   exhausted his state court remedies and that habeas relief is unavailable for some of
22   Petitioner's claims.   The Magistrate Judge issued a Report and Recommendation on
23   December 21, 2009, recommending that the Court grant Respondent's Motion.  Pursuant
24   to 28 U.S.C. § 636, the Court has reviewed the pleadings, all the records and files herein,
25   and the Report and Recommendation ("R&R").  For the reasons discussed below, the
26   Court concurs with and adopts in part the findings, conclusions, and recommendations of
27   the Magistrate Judge.
28   \\

# I.

## **PETITIONER'S ALLEGATIONS**

Petitioner, an inmate at the federal penitentiary at Lompoc ("USP Lompoc"), asserts that on July 4, 2009, four Bureau of Prisons staff "viciously assaulted" him with weapons, which physically and emotionally scarred him for life.  (Pet. at 3.)  In an alleged effort to cover up their actions, the correctional officers issued incident reports that falsely charged Petitioner with assaulting them.  Petitioner requested four staff representatives—one for each report—to assist him in the subsequent administrative proceedings.[1]  Only one staff representative, however, was assigned.  (*Id.*)  After Petitioner complained to Respondent personally, BOP staff removed him from his cell and isolated him from other inmates, leaving Petitioner "vulnerable to future attacks." (*Id.* at 4.)

Petitioner contends that the officers violated the standards of employee conduct. He requests "a declaratory order to impose all available and appropriate sanctions enumerated in [BOP] program statement 3420.09."[2]  (*Id.* at 4.)  Petitioner also requests "a declaratory order for USP Lompoc staff to refrain from retaliating against [him] for filing this action."  (*Id.*)

\\

---

[1] The BOP has no obligation to provide an inmate with a staff representative to assist the inmate with the prison grievance process, other than in the case of inmates who are illiterate, disabled, or who are not functionally literate in English.  *See* 28 C.F.R. § 542.16.  Petitioner does not claim that one of these exceptions apply to him.  Notwithstanding that the BOP is not normally required to provide a staff representative, BOP regulations nonetheless permit an inmate to obtain the assistance of another inmate, institution staff, or outside sources such as family members or attorneys.  *Id.* § 542.16(a).

[2] Program Statement 3420.09, which applies to all BOP employees, provides policies and procedures on employee conduct and responsibility, *inter alia*.  It provides non-binding guidelines on the range of punishment to be imposed for various disciplinary offenses.  For example, both "[p]hysical abuse of an inmate" and "[f]alsification, misstatement, exaggeration or concealment of material fact in connection with . . . investigation or other proper proceeding" warrant punishment ranging from official reprimand to removal.  *See* U.S. Dep't of Justice, Fed. Bureau of Prisons, *Program Statement* 1, Attachment A at 9, 12 (1999), http://www.bop.gov/policy/progstat/3420_009.pdf.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.

## EXHAUSTION

Prior to seeking habeas relief in federal court, a federal inmate must first exhaust administrative remedies available through the BOP's grievance procedure. *Fraley v. U.S. Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993) (*per curiam*). This requirement is not jurisdictional; the habeas statute, 28 U.S.C. § 2241, contains no exhaustion requirement. Rather, § 2241 petitioners must exhaust as a prudential matter, and exhaustion, though ordinarily not optional, may be waived. *See Laing v. Ashcroft*, 370 F.3d 994, 997-98 (9th Cir. 2004). Thus, exhaustion is not required if further pursuit of BOP administrative remedies would be futile. *Fraley*, 1 F.3d at 925.

The BOP grievance system works as follows: In general, the prisoner should first attempt to reach an informal resolution by presenting his or her concern to BOP staff. 28 C.F.R. § 542.13. The informal resolution attempt may be bypassed in appropriate cases. *Id*. § 542.13(b). If informal resolution is unsuccessful or bypassed, the inmate submits a formal written administrative remedy request within 20 days of the incident giving rise to the inmate's complaint. *Id*. § 542.14(a). In most cases, the warden will address the initial complaint. The prisoner may, if dissatisfied with the warden's response, appeal to the regional director and, ultimately, the general counsel, which is the final level of administrative review. *Id*. § 542.15(a).

According to Respondent, Petitioner filed three formal requests for administrative remedy at the warden level. On July 22, 2009, Petitioner filed the first of these requests:

On July 4, 2009 I was viciously assaulted by BOP staff L. VanSandt, R. Williams, A. Maldonado and R. Rawlings here in SHU.[3] R. Williams assaulted me [continuously] with a metal flashlight. C.O. L. VanSandt

---

[3] Presumably, SHU stands for "Special Housing Unit." *See generally*, 28 C.F.R. § 541.21(a) ("Disciplinary segregation is the status of confinement of an inmate housed in a special housing unit in a cell either alone or with other inmates, separated from the general population.").

punched me in my face and cut me with a razor/knife-like weapon that he pulled from his pocket.  I demand that the FBI and United States Attorney of [sic] this brutal assault and made aware that I wish to press charges against the four officers that assaulted me.  Thank you.

(Schuh Decl., Ex. C at 29.)

Petitioner filed another request for administrative remedy on August 12, 2009:

I am asking that I be removed from SHU or Officer L. VanSandt be removed from SHU.  I am constantly being harassed and threatened since he assaulted me on the 4th of July 2009.  Now on 8/12/09 C.O. Cedeno a commissary officer informed me that he never received a commissary slip with my name on it therefore I was not allowed to buy commissary for the second week in a row.  C.O. VanSandt collected my commissary sheet on Sunday like he does every Sunday.  On 8/12/09 at approximately 3pm C.O. VanSandt came to my cell and said I'll never get to shop again and he started laughing.  Prisoner J. Floyd #06820-043 witnessed this threat.  All I'm asking is that you remove me or your officer before something tragic takes place.  Thank you!

(*Id*., Ex. C at 32.)

Finally, Petitioner filed a request for administrative remedy on September 1, 2009:

On August 31, 2009 at approximately 7:25pm I was fed my religious Ramadan meal by C.O. L. VanSandt who is the very same officer that assaulted me on July 4, 2009 and has been threatening and harassing me everyday since.  On the above date and time while serving me my religious Ramadan meal C.O. VanSandt informed me that I would be receiving my breakfast bag at 4:00am.  The next morning I never received my breakfast bag and C.O. VanSandt came to my door at 6:00am laughing saying he couldn't believe I "fell for that."  As a result of him playing with my meal I was not able to fast properly and this is a direct violation of my

-4-

constitutional rights that promises freedom of religion.  I once again am asking you Warden Sanders to discipline your rogue officer and remove either him or me from your SHU.  Also officers Hawkins, Hubbard and Justice can confirm that I did not receive my breakfast meal.  I asked that it be logged in the book.

(*Id*., Ex. C at 35.)

Respondent argues that Petitioner has failed to exhaust his administrative remedies in two respects.  First, Respondent contends that Petitioner has not sought any administrative remedies regarding the disciplinary charges lodged against him, the sanctions imposed, and the procedures used in the disciplinary process.  (Mot. at 3-5.) Respondent would be correct if in fact the Petition raised these issues.  It does not, however.  While Respondent understandably attempts to construe the Petition liberally, as must the Court due to Petitioner's *pro se* status, *see Woods v. Carey*, 525 F.3d 886, 889-90 (9th Cir. 2008), "courts should not undertake to infer in one cause of action when a complaint clearly states a claim under a different cause of action."  *Bogovich v. Sandoval*, 189 F.3d 999, 1001 (9th Cir. 1999); *see also Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (*per curiam*) (observing that even a liberal interpretation of a *pro se* complaint "may not supply essential elements of the claim that were not initially pled" (internal quotation marks omitted)).

A fair reading of the Petition does not reveal a challenge either to Petitioner's sanctions from the July 4, 2009 incident or to the process used in imposing those sanctions.  Indeed, the Petition does not even mention that Petitioner received sanctions. If not for Respondent's disclosure (Schuh Decl. ¶ 9A), the Court would be unaware that Petitioner suffered a loss of good time credits or any other adverse consequences from the incident reports.  All that Petitioner relates about the administrative discipline process is that, although he requested four staff representatives but only received one, this representative "uncovered several major inconsistencies in the written reports as well as

1  eye witness reports and related interviews regarding the charges." (Pet. at 3.) Thus, it
2  does not appear that Petitioner is challenging the adequacy of the disciplinary process.

3      Petitioner would invoke this Court's habeas power for two reasons: he wants the
4  Court to impose administrative sanctions on the officers who allegedly assaulted him (or
5  to enjoin the BOP to do so) and he wants the Court to enjoin these officers from
6  retaliating against him. Although conceding that Petitioner pursued administrative
7  remedies as to these claims at the warden level, Respondent maintains that these claims
8  are unexhausted because Petitioner did not appeal to the regional director or general
9  counsel. (Mot. at 5.) Respondent is incorrect in that the warden's response obviated the
10  need for further appeal.

11      After Petitioner submitted his first formal request for administrative remedy, he
12  received the following letter from Respondent:

13      This is in response to your Request for Administrative Remedy,
14  received on July 24, 2009, in which you allege staff misconduct.

15      Due to the nature of your complaint, it has been referred to the
16  appropriate department for further investigation. Inmates, however, are not
17  advised of the outcome of staff investigations.

18      This response is for informational purposes only.

19  (Schuh Decl., Ex. C at 30.) Petitioner received identical versions of this letter, except for
20  the request number and dates, after each of his next two requests for administrative
21  remedy. (*See id.*, Ex. D at 33; Ex. E at 36.)

22      In *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005), the Ninth Circuit considered
23  when a prisoner with a staff complaint exhausts his prison administrative remedies in
24  light of an ambiguous administrative response at an intermediate level of appeal.[4] The

25  _____

26     [4] Although *Brown* involved exhaustion under the Prisoner Litigation Reform Act ("PLRA"), 42
U.S.C. § 1997e(a), the Court discerns no reason why its holding would not apply here. *See Woodford v.*
27  *Ngo*, 548 U.S. 81, 92, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) ("The law of habeas corpus has rules that
are substantively similar to [the PLRA's exhaustion requirement].")  To the extent the two exhaustion
28  doctrines differ, exhaustion in the habeas context is *less* demanding than under the PLRA because in

court compared the cases of two prisoners, Brown and Hall, who had failed to appeal their respective inmate grievances to the final level of review before proceeding to federal court.  It concluded that Brown had exhausted his administrative remedies but that Hall had not.

In explaining why Brown had exhausted his administrative remedies, the Ninth Circuit reasoned as follows:

> The second level response memorandum characterized the "appeal issue" as "Staff Complaint" and stated that the "Appeal Decision" was "Partially Granted."  Under "Summary of Investigation," the memorandum stated that a thorough investigation would be conducted through the Office of Internal Affairs; that the Administration would decide on the "appropriate action" to be taken if necessary: that Brown would not be apprised of any disciplinary action taken as a result of this complaint; and that monetary compensation is beyond the scope of the appeals process.  Under "Appeal Decision," the memorandum stated:  "Your appeal is partially granted at the second level of review, in that your appeal will be investigated by the Office of Internal Affairs, at which time you will be personally interviewed."  The memorandum did not counsel that any further review was available.

*Brown*, 422 F.3d at 937.

In comparison, Hall's case differed in two critical respects.  Hall, whose grievances involved other issues in addition to his staff complaint, was explicitly warned that he must appeal the additional issues separately.  *Id*. at 941-42.  Moreover, Hall was told that he would be notified when the staff misconduct investigation was complete but filed his case in federal court before receiving such notification.  *Id*. at 942-43.

---

habeas law, "remedies are described as having been 'exhausted' when they are no longer available, regardless of the reason for their unavailability."  *Id*. at 92-93.  The PLRA, in contrast, requires *proper* exhaustion, *i.e.*, compliance with all administrative deadlines and other critical procedural rules.  *Id*. at 90, 93.

The circumstances surrounding Petitioner's attempt at exhaustion are materially indistinguishable from those in Brown's case.   The warden's letter characterized Petitioner's request for administrative remedy as a "staff misconduct" complaint.   It informed Petitioner that his complaint would be forwarded to the appropriate department for investigation.   It explained that Petitioner would not be apprised of the outcome of this investigation.   It did not counsel that any further relief or appeal rights were available.   Given these facts, it was reasonable for Petitioner to conclude that no further administrative relief would be available.

Accordingly, the Court declines to adopt the portion of the Report and Recommendation concluding that Petitioner failed to exhaust his state court remedies and denies Respondent's Motion to Dismiss on exhaustion grounds.   The Magistrate Judge, however, recommended dismissal, at least in part, on a second ground.   To the extent Petitioner "challenges anything other than the imposition of discipline (*i.e.*, the loss of good time credits) based upon allegedly fabricated reports," the Report and Recommendation concludes that Petitioner's claims are not cognizable on habeas review. (R&R at 2 n.1.)   The Court next turns to that issue.

## III.

## HABEAS JURISDICTION

The "great object" of the writ of habeas corpus "is the liberation of those who may be imprisoned without sufficient cause." *Ex parte Watkins*, 28 U.S. (3 Pet.) 193, 202, 7 L. Ed. 650 (1830) (Marshall, C.J.).   Challenges implicating the fact or duration of a prisoner's confinement must be brought through a habeas petition while challenges to prison conditions traditionally have been cognizable only via § 1983. *Docken v. Chase*, 393 F.3d 1024, 1026 (9th Cir. 2004).   In *Docken*, the Ninth Circuit indicated that habeas and § 1983 are not mutually exclusive avenues of relief for prisoners. *Id*. at 1031.   It held that "when prison inmates seek only equitable relief . . . that, so long as they prevail, *could* potentially affect the duration of their confinement, such relief is available under the federal habeas statute." *Id*. at 1031 (applying the principle in the context of a parole

-8-

1   review challenge); *see also Ramirez v. Galaza*, 334 F.3d 850, 858 (9th Cir. 2003) ("[T]he

2   likelihood of the effect on the overall length of the prisoner's sentence . . . determines the

3   availability of habeas corpus.").

4           As discussed, *supra*, Petitioner does not challenge any administrative action

5   against him, such as the loss of good time credits, that would potentially affect the fact or

6   duration of his custody.  To the extent he asks the Court to sanction BOP staff or to order

7   the BOP to do so, such relief would not affect the duration of his confinement at all.  To

8   the extent Petitioner requests the Court to enjoin the prison guards from retaliating

9   against him, perhaps, as suggested in Petitioner's inmate grievance, by ordering

10  Petitioner's transfer out of the SHU, such relief would also, on its face, not implicate

11  Petitioner's sentence.  Nonetheless, the Ninth Circuit has indicated that such claims may

12  lie in habeas.  *See Munoz v. Rowland*, 104 F.3d 1096, 1097 (9th Cir. 1997) (involving

13  prisoner's claim that his indefinite assignment to segregated housing violated the

14  Constitution).

15          As in *Munoz*, however, the Court need not proceed further in the analysis because

16  any such claim is now moot.  On September 17, 2009, the BOP transferred Petitioner

17  from USP Lompoc to USP Canaan in Waymart, Pennsylvania.  (Schuh Decl. ¶ 4B; Oct.

18  8, 2009 Notice of Change of Address.)  Consequently, Petitioner's allegations that the

19  USP Lompoc staff were retaliating against him no longer present a live case or

20  controversy.

21          That, however, does not entirely end the matter.  Petitioner's claims that BOP staff

22  assaulted him may be cognizable under 42 U.S.C. § 1983.  As such, construing those

23  claims as a *Bivens* suit[5] may be the most appropriate course of action.  *See Wilwording v.*

24  *Swenson*, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) (*per curiam*) (approving of

25  district court's treating actions labeled "habeas corpus" as petitions for injunctive relief

26

27          [5] *Bivens v. Six Unknown Named Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619
    (1971) (holding that a federal agent who commits a constitutional violation under color of his authority
28  is subject to an action for damages).

1   under the civil rights statutes), *superseded by statute on other grounds*, PLRA; *Glaus v.*
2   *Anderson*, 408 F.3d 382, 389 (7th Cir. 2005) ("[I]f a *pro se* litigant 'asks for habeas
3   corpus when he should have brought a civil rights suit, all he has done is mislabel his
4   suit, and either he should be given leave to plead over or the mislabeling should simply
5   be ignored.'" (citation omitted)); *cf. Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991)
6   (holding that "to the extent [the prisoner] challenges the fact or duration of his
7   confinement, the district court should have construed [his] complaint as a petition for
8   habeas corpus," and "[t]o the extent [his] complaint seeks damages for civil rights
9   violations, his complaint is construed as a *Bivens* action").

10       Petitioner has failed to file either an Opposition to the Motion to Dismiss or
11   Objections to the Report and Recommendation.  Local Rule 7-12 provides that "[t]he
12   failure to file any required paper, or the failure to file it within the deadline, may be
13   deemed consent to the granting or denial of the motion."  *Pro se* litigants are required to
14   comply with both the Local and Federal Rules.  *See* C.D. Cal. L.R. 83-2.10.3.  In light of
15   Petitioner's failure to litigate this action, the Court finds it inappropriate to construe the
16   Petition as a *Bivens* complaint.  Nonetheless, if Petitioner wishes to pursue his non-
17   habeas claims that are exhausted and not moot, he may do so in a *Bivens* action.

18   \\
19   \\
20   \\
21   \\
22   \\
23   \\
24   \\
25   \\
26   \\
27   \\
28   \\

**IV.**

**<u>CONCLUSION</u>**

In light of the foregoing:

1.      The Court concurs with and adopts the findings, conclusions, and recommendations of the Magistrate Judge to the extent they are consistent with this Order; and

2.      Respondent's Motion to Dismiss is GRANTED, without prejudice to Petitioner re-filing his non-cognizable habeas claims in a *Bivens* action.


IT IS SO ORDERED.


DATED:      July 20, 2010

_____
                                 DOLLY M. GEE
                    UNITED STATES DISTRICT JUDGE

-11-